This particular case involving the two appeals with the numbers I've set, is set for 15 minutes per side, and given the number of issues on both the assignment and the levies, it might be difficult to handle it in 15 minutes. So if either side needs an extra five minutes, I'll extend the time. But we'll start with appellant, which is Hendricks & Lewis, with Kate Hendricks. Yes, Ms. Hendricks, welcome to the court. Thank you. Good morning. May it please the court, I'm Kate Hendricks, and I represent Hendricks & Lewis, a two-member law firm comprised of me and Yale Lewis, my partner and husband. We've been practicing together 28 years as Hendricks & Lewis. All on this case, it appears. Only six years. I would like to thank the court for the time in addressing the issues presented today and for hearing all four of the cases together. We very much appreciate hearing of these matters now because it has been a significant strain for a two-member firm to carry the receivable and attempt to collect the judgment. We begin with these consolidated appeals of the denial of the motion for assignment of royalties and the order for release of levies. I will address first the motion for assignment as an abuse of discretion, second the levies, and finally, I'll address the court's receipt of Clinton's ex parte submissions and our request for reassignment of these cases on remand. For Hendricks & Lewis as the judgment creditor, as lawyers and parties, the experience in these matters was horrific. Because instead of providing prompt and effective relief to Hendricks & Lewis as judgment creditor by execution, something that federal rules are designed to do, the motion for assignment became an extended and expensive proceeding with four hearings over eight months. And when Hendricks & Lewis did not agree to the imposition of a $10,000 a month payment plan, it was arbitrarily denied any relief, both on the motion for assignment and also on levies of Clinton's royalty streams from just two royalty payers, UMG or Universal Music and Capital. Now, on that point, just to clarify, Judge Wright, as I understand, rejected a percentage on the royalty stream, but didn't he provide $10,000 a month? Yes, which would have been comparable to about half of one of the royalty streams. Clinton was arguing, I think, for something like you should get 25% of the royalty stream. His motion was for 25% of the royalty stream, but earlier in court papers, after the first hearing and the second hearing, he had various proposals that included $10,000 a month plus a percentage of the royalties. Plus? Yes. So did Judge Wright award even lower than Clinton had proposed? Yes. And what was the dollar spread between what Clinton proposed and the $10,000 that you wound up getting? That was never clear because Clinton didn't specify a percentage. He just requested that not all of the royalties be assigned. Well, where did the 25% come? The 25% was in a motion for release of the levies, and that was filed after the denial of the motion for assignment. It was filed by Clinton, right? Yes. Isn't that where the 25% comes from, per Judge Fisher's question? Yes. So he did suggest that? Yes. All right. So he made a variety of proposals that had a spread that went from at least $10,000 a month, but at one point he was also proposing some royalties to the 25%, which Hendricks and Lewis computed based on what we learned about the royalties in the subpoenas that we served as being about $67,000 a year is what we computed. That's what you would have got under a 25%? Under the 25% proposal. Thank you. Ms. Hendricks, I have a couple of related questions for you, and I'm going to apologize if I'm getting you off your argument with sort of a side issue, but if I'm not confusing this case, this is the one around the assignment? Yes. The judge took your proposed order and stamped denied. Correct. So I don't think we really have a statement of affirmative reasons for why the judge did what he did. And we also have this procedure you challenged in your briefs where the judge considered ex parte papers a couple of occasions. Yes. So my question to you, and I'll have the same question to the appellees, why shouldn't we just vacate this order, send it back to Judge Wright, say that we want a reasoned statement for why he made the ruling he made on the assignments and the levies and we want to know the reasons for the ex parte procedure? Now, that runs against the grain of the point you made that you were trying to get a speedy procedure. You had four hearings. Here I'm saying maybe we have to send it back and retain jurisdiction, but get something that we can review. And I'm just speaking as one judge. I have difficulty understanding how I can review a decision when I don't have the reasons for it. We would plea to the court not to do that because the reasons that the court acted, I believe, are set forth particularly in the hearing before he entered that order. And so you can determine the rationale for the decision based on what he said in that hearing, which was that if Hendricks and Lewis didn't accept the proposal, then he was going to put the case in a drawer and put it on an annual status review. But he didn't do that. The judge didn't do that. Well, effectively he did do that because the levees should have had a hearing within 30 days of the exemptions and the objections to the exemptions by Hendricks and Lewis. And he was set forth a hearing eventually November 21st in 2011, but he then took it off the calendar. It was, we then had about a year and a half later a status conference. We're very familiar with the facts. And so I don't want to use up all your time. I know it's very precious to you. But to Judge Kuhl's point, which was, his question really was, why wouldn't we remand this to get findings? And I think what your response was is we know why he did what he did. Right. But he didn't, and then you pointed to the place in the record where there was a statement about putting the file in a drawer. In fact, he denied your motion. Right. Right. And then went forward to enter another motion that you're also very unhappy about. But where in the record does he tell us why he did that? Well, he doesn't say at any point, this is why I did it. But he. He announced his theory, though, didn't he? Yes. He was trying to get warning parties together. Reach an agreement. Reach an agreement, prosecute against third parties, get the resources marshaled so that you would get some money, Clinton would get some money, and so on. So if we're not going to send it back to articulate, that's what I take from it. This is a scrambled mess. You've got litigation going on on two fronts, or four, whatever, up here in Seattle and down in Los Angeles. And if we just look at the record, at least as I look at the record, why is this different from a judge sort of acting as a settlement judge, trying to get the parties together to come up with a course of action that would ultimately wind up this longstanding dispute? If we resort to that, if I approach it that way, then what you're coming back to is saying, well, we didn't get a hearing on a timely basis. So that now says, okay, now we're going to decide this on a procedural, due process frame of reference. That leaves me unsatisfied, because then how can we say you were denied due process if we still have to decide whether you were prejudiced? In other words, would you have done any better if you'd had a hearing? So that's my problem. Let me just ask this. If we go through these arguments today, is there room for a court mediator to get together with all of you and go through and see if there's a way, not with Judge Wright, but with a court mediator and let you guys get together and see if you can work something out? Or is the dog out of the kennel and there's no getting it back? We've had some Ninth Circuit mediation before, but it was with the background of it on a pending case before the district court. So Judge Fischer is saying, is it possible that if we referred this to a court mediator that you and Mr. Clinton's lawyers would be able to work something out to resolve all these cases? I don't know the answer to that. There have been many attempts to try to settle. I think the last thing that happened, well, counsel asked me this morning could we talk about settlement, and yes, but not right before the oral arguments. But I think that there do need to be some decisions that can guide the parties. There is already a judgment, and Mr. Clinton doesn't really need a settlement per se to know what his obligation is, which is to pay the judgment. The judgment is set and can't at this stage be collaterally attacked, I don't think. But let me just clarify one thing to make sure I'm not totally off base. I did read all those hearing transcripts. I don't recall reading anything where the judge explained the reasons why he submitted, he permitted papers to be submitted ex parte, and I don't believe the ex parte submissions are in the record. So I don't have those to review. I can't review that material and make an assessment of whether you were prejudiced by it. That's why I was asking whether we should ask this judge to take another shot at explanation, explain this to us. Am I right? There's nothing in the record that explains why he did this ex parte and that describes what was assumed that you would not have a description of the documents or statements that were given ex parte. Well, there is no rationale on the part of the district court as to why he accepted the papers. He simply said, yes, he would accept them. There were some descriptions of what the materials were that included attorney-client privilege and work product materials about the case that Mr. Clinton was going to file in this district, in the Western District of Washington. There were also apparently some descriptions of cases that Mr. Clinton was litigating or planned to litigate. But I think the only thing that happened between the time of the fourth hearing and the time that the court stamped the order denied was that Hendricks and Lewis filed a second set of levies against UMG and Capital. And there was no explanation, but that's what happened between the time he said yes or no, accept this settlement, and the time that he denied the order. Okay, well, we've taken you far afield from your planned argument, so you better return to it. And I'll have Stacey add eight minutes on the time. You can just go through your argument. All right. Thank you. We'll give more time for Clinton's lawyers, too, if they need it. I would like to reserve some of that for rebuttal, about five minutes. But I think the question becomes, especially with the court's questions, wasn't the court's denial of the assignment of royalties decision an exercise of discretion, which is reviewed under the abuse of discretion standard? And we would concede that Section 708.510 of the California Civil Code calls for an exercise of the court's discretion in deciding whether to assign royalties, and if so, how much. That exercise, though, is to be informed by the statutory standard, which requires consideration of the relevant factors, including the debtor's reasonable requirements for himself and his dependents, other judgments that he is required to make, the amount due on the judgment, and the amount to be received on assignment. And so then you're looking at the royalties and what the assignment might be and how that might contribute to payment of the judgment. Counsel, is there any place in the record where your firm agreed to something less than 100% of the royalty by way of assignment? I don't believe so. How does that drive with, to cut to the chase, with what you just acknowledged was the ability of the court to exercise discretion and how to allocate or assign that income stream? Well, if the court, in a way, it's a question about, as I understand it, why we weren't accepting the $10,000 a month. My question is, it's a little different than that. Maybe you've answered it, but it seems that your continued position was 100%, but you've also acknowledged that the judge could exercise discretion, right? Right, right. Given that Mr. Clinton needed to continue to operate and eat and whatnot, so what's your position about that? We expected that the court would exercise discretion, but there's no evidence that he did that or that he used the correct legal standard. Because you didn't get the hearing on the exemptions? Is that what you're saying, that he didn't follow that path? Two different things. One with the motion for assignment, that the question is whether the district court identified the correct legal standard for decision before it. And the focus of the court was on permitting Mr. Clinton to proceed with litigation that he was involved in, rather than looking at the debtor's reasonable requirements for himself and his dependents, which I think is a standard that is much more focused on necessity than litigation, which is very uncertain, didn't have budgets, didn't have any information about likelihood of success or what that might be. Thank you. So the court's standard for decision seems to have been whether Hendricks and Lewis would give up the statutory right for levies. That is, its ability to collect under California law, rather than looking at these four factors. There was evidence in the record of the factors, the amount of the judgment, not that Clinton had any other judgments to pay. He did not provide complete information on his reasonable requirements and under the California cases should then have provided a financial statement, a complete financial statement so the court could make an assessment. But isn't part of your problem you don't know if that happened because there was an in-camera submission and you don't know what's in it, right? Yes, that's true. And Ms. Hendricks, you wanted to have rebuttal arguments? Yes. You've got four minutes now. All right. Would you like to wait for it? I will reserve that. Thank you. Thank you. And now for Mr. George Clinton, we have Jeffrey Vanish from Detroit came to visit us. Thank you. Yes, thank you. Thank you very much, Your Honor. I'd also like to thank the panel and the court's personnel for giving me the offering the opportunity to appear by telephone. But as we see, given the number of issues that we have this morning, I think being here in person and addressing any questions that the panel has. Wise decision. Could you start by pronouncing your name for me so my law clerk and I can know? Sure. It is Vanish. It is spelled T as in Tom. I got the spelling. It was a pronunciation I couldn't get. So thank you so much. I wanted to make sure I had both your names right. Thank you. Let me ask you, just getting into the heart of it quickly, I want to ask you the same question that I asked Ms. Hendricks. How can we review an opinion in order that doesn't give any reasons, especially just as denied on their order? And there's stuff in the hearing, but it's not like a precise chain of reasoning. And also, how can we review stuff that was submitted ex parte that's not in the record that we see? And we also don't have a statement of why the court permitted an ex parte procedure, which kind of goes against, if not 1,000 years, let's say 800 years of jurisprudence. Understood. I listened to the argument very closely, and it is correct that there were at least four hearings on these issues before Judge Wright. And I think that in the transcripts, I think you see an increasingly frustrated district court judge who is genuinely attempted to resolve the issues, but he was thwarted in exercising his discretion because the response was always, give me 100 percent of everything that Mr. Clinton has. One of the statements that Judge Wright made in one of the hearings, I think, says it all. He looked at Hendricks and Lewis and says, you want everything, you want it now, including his dreams. He made a lot of statements. But to answer your question more precisely, Judge, yes, we would welcome the opportunity. If the panel does not believe that there is enough information in order to allow the panel to conduct a proper review and inquiry, on behalf of Mr. Clinton, he would welcome the opportunity to go back to Judge Wright in any type of vacating or remand or instructions that mandate that the panel may give. We do believe that Judge Wright understands these issues. We do believe that he could also push for a settlement. I spoke with Mr. Clinton. He tried that. It didn't work so well. But the idea was it was 100 percent or nothing. And I've spoken to Mr. Clinton. He is ready, willing, and able to come far above the previous law for 25 percent. On behalf of Mr. Clinton, I would say that he would welcome any thoughts or instructions from this panel to refer this matter to any mediator of the panel's choice with no preconditions whatsoever for he will come and negotiate. If we refer it to mediation, it would be to the Ninth Circuit mediators, and it would be under our auspices. I don't think we would send it back for more attempts in the district court. Speaking from my standpoint, to make it clear, Judge Gould is correct. We have mediators on this court. But if the parties agree on a mediator other than the Ninth Circuit mediation staff, I would not foreclose that. And we generally don't, I don't, support forcing mediation. But if it's welcomed by the parties, we'll all attest to the competency and success of our mediation staff. And they are so good that even though the mediation concept arises during oral argument and after the arguments have been made, they are very experienced at working through the process. So I would, since you're enthusiastic about it, I guess I'm speaking to Hendricks Law Firm. I'm not, personally, I'm not forcing it, but I'm a believer in it. So I'll let it go at that. I agree with what Judge Fischer said. We would not, first of all, we don't force mediation at most. We might enter an order that defers submission for a period of time to permit mediation if the parties want to do it. But if either party didn't want to do it, we would proceed to make a decision. But I guess I'd still like to hear from you, Mr. Dench. What could possibly justify the court reviewing papers ex parte? Well, how can Hendricks and Lewis prove that they were prejudiced by this procedure without knowing what the documents were? And I can certainly appreciate the panel's position of not having information to do your task. I can say that I was the attorney below, and the materials that were submitted in camera to Judge Wright consisted of other third-party infringements or takings of Mr. Clinton's works, which could then lead to recoveries. What do you mean by that? You mean descriptions of ongoing litigation or possible litigation? Or straight ascertainable takings and infringements of his music. As the court is well aware, Mr. Clinton is in his early 70s. He's been in the music industry for five decades. In addition to the musical works that we're going to talk about today, he's got a large catalog as an artist-composer. Okay, so my question is different. Forgive me for interrupting, but the time is ticking away. So you're saying the in-camera submissions were just sort of descriptions of possible causes of action he might have? With specific defendants and specific takings of the works and evaluation of what those cases or settlements could bring and how they could pay off the judgment if we could pursue those cases. Had the judge, Judge Wright, asked for budgeting information about what's it going to cost to fund these pieces of litigation? It was very, very clear to Judge Wright, as I'm here today, and because of course Hendricks and Lewis being his former attorneys, I was going to be the one to do all of Mr. Clinton's litigation on contingency and with a shoestring budget for costs. Okay, so another thing that Judge Wright mentioned during the course of these hearings, and I can't tell you which one, maybe more than one, was that he said a couple of times Mr. Clinton needed to keep touring to generate revenue to support himself but also to pay these judgments. And to Judge Fisher's point, he was trying to facilitate payment, is certainly how I read the transcript. So did he ask for Mr. Clinton to submit a budget to show what it cost for him to continue touring or performing? I believe that what we had left off, we did give financials information about, I think, his then existing tour. I believe at one point in time, I believe it was in the April 2011 time frame. Because the judge made a comment about I know it costs a considerable amount of money. It sounded to me like that's what was going to be presented. Is that correct? Yes, there was information like that. For example, there was a European tour, for example, during that time frame when we had talked about these are the amount of people that would be in the group traveling with airfare to Europe and so forth, and how much money would come in from the given venue, which we would submit was confidential financial information. But going to Judge Gould's point, the opposing counsel doesn't know what was in there even by way of maybe a general, general description such as the one you've just given now. And their impression on the receiving end was that after those in-camera submissions were received by the court that the tenor of the proceedings changed. So their left, it seems to me, their position is that they're left not knowing why. Well, I would say that over the course of these, of those four hearings, it was very, very clear why. This is a 72-year-old man who collects Social Security. His income is derived from these royalty streams. Yes, God willing, he can still go out and perform. But during this odyssey of the last few years, he's also had some serious health issues, was hospitalized, and there was the very well-founded fear of what if he can't perform anymore? And as I said when I came here, I came from Detroit, where I also represent a number of the elderly former Motown musicians. I will say to the panel, Mr. Clinton is fortunate that he can still go out and perform. Those others can't. I visit folks in nursing homes that are in the Rock and Roll Hall of Fame. So I've taken away a field from Judge Gould's question, which is what you're trying to answer. How can there be justification for accepting these under seal? Where do we go from here? Well, you know, unlike Hendricks and Lewis, I would say that I would welcome, if the court needs to vacate and send this back down to Judge Wright for clarification and more information, we would welcome that. Well, I think that's not all they're asking for, and it's not all that's on the table, which is counsel's point that the legal issue before us is whether Judge Wright followed procedures that focused on their entitlement as a judgment creditor, and his focus was on Mr. Clinton's well-being. They had a judgment. They had a right to be paid. They have an income stream that is arguably superior to Mr. Clinton's. And so that's the ultimate. For my purposes of evaluating the legal issues, it's a question of whether, because we're not here as settlement judges. We're here to decide whether the law firm got its procedural rights and its legal superiority. So that's what's going to be on the table if we were to go back, if you were to go back. Sure. And if I may, I'd like to address that directly. I would like to. It's clear from the court below in the multiple proceedings, Mr. Clinton recognizes without question that he is a judgment debtor. And likewise, Henriksen Lewis is a judgment creditor. A judgment creditor under our system has tools at their disposal to collect on their judgments. However, those tools do not include a club to punish and handicap a debtor. Henriksen Lewis, in this particular case, took their judgment from the Western District of Washington down to the Central District of California. They intentionally availed themselves to that forum for the reasons set forth in their original pleading. But what's wrong with that? It's the epicenter of the entertainment industry. But under Rule 69 of the federal rules, when you are seeking to enforce a judgment, you are also subject to the state rules of where that district court is sitting. That includes protections under California debtor-creditor relations where it says that the policy of such things is to rehabilitate the debtor. Yes, we want him to pay. Mr. Clinton realizes he has a judgment he has to pay. But this, under our rules and the procedures given to someone, this is not something of, to use a poor Super Bowl analogy, I'm certain that some people lost some wagers on the football game on Sunday. But only a loan shark and a bookie would break the kneecaps of their customers when they couldn't pay. Here, we need to come up with a workable plan, and Mr. Clinton did offer that to Judge Wright. At certain points in time, and this is in the record, Mr. Clinton offered 50 percent of all of his royalty income streams. And what you see from Judge Wright is consternation because these levies were attached. The money was just sitting there. No one was getting it because the parties didn't know who to pay, these other third-party royalty companies. And then one of my points is from a purely housekeeping standpoint, the court or the panel is aware that within the last couple weeks, I filed some requests for judicial notice of yet another proceeding commenced by Henrikson Lewis in the Middle District of Tennessee against BMI, also known as Broadcast Music, Inc., to get their materials and those royalties. And as I try to be an appellee and defend these appeals, I'm not sure what appeal I'm defending. The second order that's before us today, the court will recall that Henrikson Lewis filed an emergency appeal with an emergency motion to stay the appeal. And in the papers, Henrikson Lewis stated that the order by Judge Wright is so broad and encompassing and abuse of discretion that it stops their collection efforts in California and elsewhere. That's in their statement to the Ninth Circuit. However, it didn't stop them. They went to Tennessee, and they're using the powers through that court to collect it. So what we have is really abusive tactics of the tools that are available to a judgment. You're just leaving me in the dust here. I don't understand what's wrong about having a judgment and then seeking to enforce it in various jurisdictions. Nothing except if Judge Wright's order was so overbroad that it precluded them from going after these sources. So you're thinking that they made a misrepresentation. Yes, I do. Okay. Mr. Sanich, your initially scheduled time has been used up. We'll give you more time. I sort of started this problem by digressing on the questions of interest to me. Let me ask you, how much time do you need to get through the issues on this case? If I could get maybe six minutes. Okay, let's add six minutes, and then we'll have you finish. Then we'll have Hendricks and Lewis. We'll give it five minutes of rebuttal, and then we'll go on to the next one. Thank you. I just wanted to address some of the specifics in this case. As the Court is aware, Mr. Clinton has also filed motions to dismiss the two appeals for lack of the Court's jurisdiction. The first appeal was considered as a motion for a turnover order filed by Hendricks and Lewis, which Judge Wright denied. And we have taken the position that that order is not a final appealable order within the meaning of 28 U.S.C. 1291, which says it must represent a final determination as to the assets possessed by the parties against whom the motion is made. Well, certainly I think we can agree that that was not a final disposition. In fact, it was only the first disposition and the first appeal that we have today. I cite in the briefs the Ninth Circuit case of FTC versus Overseas Limited and CFTC versus Topworth for the proposition that a turnover order is not a final appealable order. Now, in response, in talking through these things based upon the earlier arguments, one of the reasons why there was some delay in the District Court is because when the first appeal was filed, there was a question of whether or not that served as an automatic stay over Judge Wright's actions. That's why I filed the motion to dismiss that appeal for lack of jurisdiction, wanted to get the appeal out of the way so that we could proceed before Judge Wright. So the second order, again, was appealed, even though the case before Judge Wright was still pending, including Ms. Hendrick's own exemption filings. So I question whether this, the Court would have, and I preserve that right, that the Court may lack jurisdiction for these two appeals. And then in coming today, I wanted to make an additional point based upon the more recent filings in Tennessee, and this goes to an opinion that Judge Gould had written in the matter of Thorpe Insulation, which I believe is an October 2013 decision of the Court, where there may be some equitable mootness or mootness by conduct issues here, in the sense that if Hendricks and Lewis is saying that Judge Wright's orders were so broad and encompassing that it frustrates their ability to collect on their judgment, then we can see that by their own conduct, no such frustration actually exists, because they're free to go to the Middle District of Tennessee, or as Judge Christian said, as a judgment creditor, they're free to do anything they want, and they have. Well, it's not clear that that would enforce or affect their ability to collect all that they're due, so you might move on to another issue. Okay. Then turning to the issues of the specifics that the decisions that Judge Wright entered into, if the Court were to take the position that there is jurisdiction, is that he had documents, multiple hearings, he was in the best place to know what was happening with the parties, as to paraphrase Judge Fischer from one of your decisions that I read, it's the judge's job to call balls and strikes. Oh, I've never said that. Don't lay that one on me. That's the chief justice mantra. But the point would be, not to go overboard with the sports analogy, but I think what Judge Wright here, he called it a wild pitch, and I think that there was some consternation on his part, but certainly he acted within his discretion. In fact, if we talk about the abuse of discretion standard being something that is beyond the pale of reasonable justification under the circumstances, I think that Judge Wright acted properly in his decision. Within his discretion to consider materials ex parte? I think if they were in-camera submissions talking about the ability of a judgment debtor to pay the judgment. Why isn't that, what's the rationale for keeping those ex parte and in-camera? Actually, at that point, two of the matters were pending litigation, one of which is the lien of the settlement amount that we're going to talk about, the Black Eyed Peace case later this morning, and the other one was a case against Universal Music that was before Judge Gutierrez of the Central District of California, both of which have since settled and both of which Hendrickson Lewis asserted the lien claims for. So if anything, I as the counsel probably, and I think professionally, felt that that material should at least have some level of protection because of the ongoing nature of the case. That was noticed motion and? For the? For the ex parte and? Yeah, for the, yeah. That was all laid out before the, to the court? It was a protective order. For the, I submitted it under seal as an in-camera. Why couldn't there have been a protective order that was strict that let Hendrickson Lewis see all that stuff but not disclose it? Because of the, because of the financial nature of it to, not only to Mr. Clinton, but also unrelated third parties that perform with him? Why couldn't that be in a, I'm not, in litigation, generally there's lots of confidential things come up and they're handled by protective orders. It could have been handled by a protective order, but also if Hendrickson Lewis was concerned about that, they were, most of those filings were done under seal and there would have been a potential motion on their part to unseal them if they needed to see them and the record is devoid of any such motion to unseal it. Then lastly, with respect to this idea of reassigning the case to another judicial officer of the Central District of California? I think it's too early to address that. I think your time is up. We've got three other cases where you'll get to educate us further. Why don't we let Ms. Hendricks. Thank you, Your Honor. This is a mammoth task with so many issues, but I know you've got broad legal shoulders. Thank you, Your Honor. I would like to address the levies because I think they're, it's not simply a matter of discretion. California law provides for a certain procedure to be followed that the exemptions are only statutory exemptions and once the debtor makes the claim of exemptions, there's supposed to be a hearing on those. Yes. So there was no hearing and the matter was denied, but the order was quite an extraordinary order. It required Hendricks and Lewis to notify the levy parties and direct release of the funds. It has unquestionably interfered with our ability to collect. There have been no more levies in the Central District and it has obviously had an impact in Tennessee because BMI, who was not a party in Tennessee, has resisted the garnishment there. We have filed a motion and BMI has opposed it. So that's sitting there waiting for decision and perhaps the magistrate who has the matter is also waiting for direction from this court about whether that matter was restricted by the Central District. Can I ask a question about this? The last order, the last Rule 69 order that the judge granted, as opposed to the earlier one, directed that the money go to Mr. Clinton's counsel's trust fund and I think somewhere in the pleadings it said no funds had been received. It also required that an accounting be made and I think quarterly reports, in a way, periodic reports about how much money by way of royalty was landing in that account. So my first question, have you received any accounting? No. No periodic updates about royalties going into that account? No. What explanation is there that no royalties have landed? I don't understand. The only explanation that I have is somewhat via Mr. Clinton's papers. As I understand it, UMG continues to hold its funds because of the appeal that it has litigation hold on the funds. That's UMG's choice. That's something that they've done independently. We have no knowledge about capital or anyone else. So we really don't have much information. Okay, you've answered my question. Thank you. I would also like to address, again, the matter of the papers that were filed that we couldn't see. As described, being related to the financial situation of Mr. Clinton, that's fundamental information in a collection proceeding that we should have had an opportunity to see. He said you could have moved to unseal, did you? Well, no, we didn't move to unseal, but we opposed his motion to file in camera. So we did oppose our lack of access, and that was raised by our counsel in each of the hearings as well. As I understand the standard for such kinds of submissions, it was clearly not an inspection to prevent their use, but rather they were being used by Mr. Clinton. It was not a matter of national security. This case is not about national security. And there's been no suggestion that there is any statute that would have permitted any kind of ex parte submission. So for all these reasons, there's really no basis for there to have been an ex parte submission. We think that reassignment is appropriate. We have concerns that the judge might not put out of his mind his prior position, and that's indicated by putting the matter on a status conference for a year and a half later and then simply doing something that was contrary to the law in California. I think your rebuttal time is up. I'm wondering if you could address, if you want to argue more about reassignment, raise it in one of the other three cases. All right. Thank you, Your Honor. We're going to hear from you again, right? Yes. Okay. Why don't we do that? This first case involving 11-56892 and 13-55402 shall be submitted.
judges: Fisher, Gould, Christen